[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Articulation
The Supreme Court has held that "in light of the strong public policy manifested by the environmental protection statutes . . . a municipality may be liable for a public nuisance CT Page 6206 that it intentionally creates through its prolonged and deliberate failure to act to abate that nuisance." Keeney v. OldSaybrook, 237 Conn. 135, 166.
The Supreme Court has directed this court to articulate whether Old Saybrook's continuing conduct over time in creating a public nuisance, in light of the various orders, rose to the level of intentional conduct under § 825 of the Restatement (Second) of Torts. Subsections (c) and (d) of § 825 provide:
 "c. Meaning of intentional invasion." To be "intentional," an invasion of another's interest in the use and enjoyment of land, or of the public right, need not be inspired by malice or ill will on the actor's part toward the other. An invasion so inspired is intentional, but so is an invasion that the actor knowingly causes in the pursuit of a laudable enterprise without any desire to cause harm. It is the knowledge that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional. It is not enough to make an invasion intentional that the actor realizes or should realize that his conduct involves a serious risk or likelihood of causing the invasion. He must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from his conduct. . .
 "d. Continuing or recurrent invasions. Most of the litigation over private nuisances involves situations in which there are continuing or recurrent invasions resulting from continuing or recurrent conduct; and the same is true of many public nuisance. In these cases the first invasion resulting from the actor's conduct may be either intentional or unintentional; but when the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional."
The court finds that Old Saybrook has acted intentionally by failing to abate the public nuisance, id. at 160, and it holds that Old Saybrook's continuing conduct over time in creating the public nuisance in light of the various orders, rose to the level of intentional conduct under § 825 of the Restatement (Second) Tons.
As stated in the Restatement (t)he first invasion resulting from the actor's conduct may be either intentional or unintentional; but when the conduct is continued after the actor CT Page 6207 knows that the invasion is resulting from it, further invasions are intentional." Old Saybrook intentionally created the public nuisance because it knew that the public nuisance was resulting or substantially certain to result from its conduct and that its conduct continued after it knew by the issuance of DEP orders and by the conclusions of its own engineering reports that failing septic systems within the town were creating the public nuisance by causing pollution.
The following evidence presented at trial showed that Old Saybrook has known for years that the public nuisance existed yet it has failed to abate the nuisance.
 Report developed for Old Saybrook in 1978-80 by Malcolm Pirnie (Ex. A.) with revisions in 1981 (plaintiff's Ex. X), and further supplemented with a draft report in 1983 with a final report dated August 1987 (Plaintiff's Ex. W.). Specifically identified were Designation areas where problems were presently existing which could not be rehabilitated and needed a structural solution to convey the wastewater off-site for treatment. (Transcript 2-16-94, Pg. 15)
 Meeting on January 22, 1981 between DEP officials, Old Saybrook officials and Malcolm Pirnie, Inc. (Plaintiff's Ex. B. pages 3 and 4) wherein DEP, town, and Malcolm Pirnie officials discussed Designation areas where wells were contaminated, septic system repairs were not successful, and shellfishing areas were closed.
 Letter from Town Attorney dated May 20, 1981 (Plaintiff's Ex. C) wherein he acknowledged that Old Saybrook "recognized that there are areas of the Town which without action, might cause pollution of the waters under the relevant statutes . . . However, he claimed there was no immediate hazard or health threat.
 Letter to town attorney from DEP dated May 20, 1981 (Plaintiff's Ex. D). It states: "Public hearing, comments, discussions with Town officials and review of data presented by Malcolm Pirnie, Inc. all point to the conclusion that there are several areas of the community experiencing subsurface wastewater disposal system problems. We feel that prompt, formal action is necessary to ensure local control sufficient to prevent increased risk to a public health and water quality." CT Page 6208
 Orders Nos. 3109, 3110, 3111 dated August 10, 1981 wherein the EPA stated that Old Saybrook is a municipality maintaining conditions which can reasonably be anticipated to cause pollution. (Plaintiff's Exs. I, J, K.)
 Letter to First Selectwoman from Sanitary Engineer dated March 23, 1983 informing her of failure to comply with orders 3109, 3110, 3111 (Plaintiff's Ex. P.)
 Letter from First Selectwoman to DEP dated April 5 1983 (Plaintiff's Ex. Q) in which she indicated that not until September, 1984 did Old Saybrook expect to be inspecting all II and I areas. Yet Plaintiff's Exhibit P indicated that designation areas should be inspected annually.
 On December 31, 1985 the DEP issued order No. 4116 which required the submission of a report to the DEP concerning wastewater management problems. The order stated: "Having found that the towns of Westbrook and Old Saybrook are municipalities in which community pollution problems exist and in which community pollution problems can reasonably be anticipated to occur. . ." (Plaintiff's Ex. HH)
 In accordance with order 4116 Old Saybrook hired Hayden/Wegman to prepare a joint Wastewater Management Study. The revised final draft was dated March 1989 (Plaintiff's Ex. MM). The study recommended that the best off-site solution to abate water pollution was to construct a wastewater treatment plant.
 In a memo to the members of the Board of Finance from the First Selectwoman, dated April 12, 1989, she stated: "The Board of Selectmen acting as the Water Pollution Control Authority requests Board of Finance to recommend to Town meeting and Public Hearing approval of the sewer project as outlined in the final draft of the Hayden-Wegman engineering report of March 1989 contingent upon approval of the project and funding by DEP." (Defendant's Ex. JJ).
 At a June 1, 1989 meeting the Board of Selectmen, in its capacity of Water Pollution Control Authority unanimously approved acceptance of the Hayden-Wegman Old Saybrook/Westbrook Study. (Plaintiff's Ex. KK and LL).
The DEP approved Old Saybrook's engineering report prepared CT Page 6209 by Hayden-Wegman and notified the Old Saybrook First Selectman by letter dated September 18, 1989. (Plaintiff's Ex. W) (Defendant's Ex. W)
 Old Saybrook acknowledged the need to abate the public nuisance by holding an educational workshop for the public on November 8, 1989. (Plaintiff's Ex. YY).
 On October 19, 1989 the Board of Selectmen acknowledged the need to abate the public nuisance by agreeing to hold a voter referendum on the recommendation for construction of the wastewater treatment facility (Plaintiff's Ex. BBB).
 A special meeting for the general public was held on November 13, 1989 in which pollution by failing septic systems was discussed. (Plaintiff's Ex. KKK).
 A referendum of the voters was held on November 21, 1989. (Plaintiff's Ex. LLL). The voters were told that "(p)ollution problems have been identified over the past fifteen years. Many septic systems have failed and are creating a public health hazard. . ."
 Despite the finding of a community pollution problem by a DEP order, the identification in engineering reports of significant septic system failures which were causing pollution, and that the construction of a wastewater treatment facility was the best solution to abate the public nuisance, the voters voted against the referendum questions. (Plaintiff's Ex. MMM).
 Minutes from a Selectmen's meeting on November 29, 1989 state that an exit poll of voters shows "no one is saying the problem does not exist." (Plaintiff's Ex. NNN).
 Minutes of Water Pollution Control Authority meeting dated December 12, 1989 wherein Mr. Milkofsky, the Town Sanitarian, indicated "that the pollution problem first came to the attention of the State Health Department in 1968 when elevated bacteria counts were found with respect to shellfish beds." (Plaintiff's Ex. PPP).
 In a letter dated January 2, 1990 the DEP reminded the First Selectman of the importance of constructing the wastewater treatment plant and moving forward in a timely fashion. CT Page 6210 (Plaintiff's Ex. UUU).
 Letter from the DEP to Old Saybrook First Selectman dated November 19, 1990 expressing concern that Old Saybrook "had significantly reduced the funding and staffing of the town Environmental Health Department in the latest town budget." The letter stated: "Your actions to reduce the budget of the town department responsible for such management, less than a year after the approval of the engineering report, calls into question both the town's desire and ability to address the clearly identified environmental problems in Old Saybrook." (Plaintiff's Ex. AA)
 Old Saybrook hired another consultant, Nexus Engineering Associates to undertake another study. (Ex. WWW). Old Saybrook acknowledged the problems found in the Nexus report in a Water Pollution Control Authority publication dated August 1992. (Plaintiff's Ex. XXX). The publication stated in regard to the Nexus report: "The conclusion was that there is a serious problem that requires a structural solution."
 The Nexus report was also discussed in a document dated December 11, 1991 prepared by the Board of Selectmen. (Plaintiff's Ex. YYY). The document shows that the Board of Selectmen was aware that "(t)here are defined geographic areas which require off-site solutions to existing on-site subsurface sewage disposed systems, due to high groundwater, excessive soil permeability, and small lot sizes."
 Old Saybrook hired Weston Sampson to do another study and it sent a letter dated March 5, 1993 to the DEP formalizing recommendations on wastewater needs based upon that report. The DEP responded with the concern that the town was "retrenching back to square one and that it does not have a timetable to draw a final conclusion. It is possible for someone watching this project to assert that Old Saybrook is keeping the studies going without the intent of drawing any final conclusions and moving forward with a project. (Plaintiff's Exhibit ZZZ).
 A meeting was held on April 14, 1993 between DEP and Town officials. This was followed by a letter from the DEP to the First Selectman. The DEP stated that the site investigation conducted by the Weston and Sampson Study was exhaustive and that no further investigation was warranted. It repeated its CT Page 6211 concern that a regional treatment plant he constructed. (Ex. Plaintiff's AAAA).
In summary, the court finds that Old Saybrook has been aware of the community pollution problems in Old Saybrook for several years. It has ordered studies and held many meetings in its efforts to solve the pollution problems. The fact remains, however, that it has failed to abate the nuisance. Thus, this court finds that it has acted intentionally within the meaning of § 825 of the Restatement (Second) of Torts.
Allen, J.